1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9    Meloniece Gaskin,                              No. CV-23-01919-PHX-SMB

10                    Plaintiff,                    **ORDER**

11   v.

12   BMO Harris Bank NA,

13                    Defendant.

14

15          Pending before the Court is Defendant's Motion to Dismiss (Doc. 12).  Plaintiff

16   filed a response (Doc. 16), to which Defendant replied (Doc. 17).  Plaintiff also filed a

17   Motion and Request for an Evidentiary Hearing (Doc. 18).  Defendant responded to this

18   Motion (Doc. 20), and Plaintiff replied (Doc. 21).  The Court will grant Defendant's

19   Motion (Doc. 12) and deny Plaintiff's Motion (Doc. 18).

20   **I.      FACTUAL BACKGROUND**

21          This case arises from a failed banking relationship.  Plaintiff is the Chief Executive

22   Officer of a mortgage brokerage and formerly conducted her business banking through

23   BMO Harris Bank ("BMO").  (Doc. 11; Doc. 16 at 8.)  The following facts are alleged in

24   Plaintiff's First Amended Complaint ("FAC") (Doc 11.)  On August 30, 2023, Gaskin

25   visited BMO's Deer Valley branch to withdraw $9,790.55 from her business account via a

26   cashier's check.  (*Id.* at 2.)  The branch manager, Lashan Corry, advised Plaintiff that "her

27   account was being placed on hold by the back office" until further investigation due to the

28   number of wire transactions received in a short period of time.  (*Id.* at 3.)  Plaintiff states

1   that she received four wire transfers between August 2023 and September 2023.  (*Id.*)

2   Plaintiff provided the wire confirmations for each of these transactions to Corry.  (*Id.*)

3   However, Corry explained that the funds would not be released until September 5, 2023,

4   once the back office completed their investigation.  (*Id.*)

5          Later the same day, Plaintiff visited the BMO branch in Mesa and spoke to a

6   different representative.  (*Id.* at 3–4.)  At this location, she was informed that Corry had

7   "placed the block on the Plaintiffs['] account."  (*Id.* at 4.)  Plaintiff then spoke with BMO's

8   wire department, who stated that "they were working to get the block cleared from the

9   account."  (*Id.*)  Plaintiff subsequently received two calls from Corry in which Corry stated

10  that she "was provided the clearance to remove the block from the account" and "she will

11  be working to remove the block from the account."  (*Id.*)  The next day, Corry called

12  Plaintiff and confirmed that the account was unlocked.  (*Id.*)  On that call, Corry explained

13  that suspicious activity regarding the source of funds caused Corry to place the block on

14  the account.  (*Id.*)  Plaintiff told Corry that prior to the account being blocked, she

15  conducted debit card, ACH, and Zelle transactions and never received any notice of fraud.

16  (*Id.*)

17         After her account was unlocked, Plaintiff was able to withdraw funds and receive

18  additional wire transactions.  (*Id.*)  This continued until September 14, 2023, when her

19  debit card was declined.  (*Id.* at 5.)  Plaintiff called BMO and was placed on hold multiple

20  times, but eventually learned that her account was again frozen by an internal employee,

21  with no notes indicating the reason.  (*Id.*)  Plaintiff then contacted Corry but was transferred

22  to another BMO employee who told her that BMO was investigating Plaintiff due to

23  possible wire fraud and would not provide any further information.  (*Id.*)  Later that day,

24  Plaintiff visited the BMO branch in Queen Creek and spoke with the branch manager,

25  Frank Witczak.  (*Id.*)  Witczak advised Plaintiff that he would investigate the cause of the

26  issue.  (*Id.*)

27         Five days later, Plaintiff received a call from David Purpura, the Director of

28  Customer Advocacy and Governance at BMO.  (*Id.* at 6.)  Purpura informed Plaintiff that

1   the freeze had been lifted and that she could use her account.  (*Id.*)  He also told Plaintiff

2   that the second freeze occurred because a third-party financial institution had inquired with

3   BMO regarding a wire transaction sent to Plaintiff.  (*Id.*)  Plaintiff also learned that BMO

4   emailed each of her wire originators on August 31, 2023 asking them to confirm their

5   authority and their relationship to Plaintiff.  (*Id.*)  In response, Plaintiff returned to the

6   Queen Creek BMO branch, had all her funds wired to a new account at a different bank,

7   and closed her account.  (*Id.* at 7.)

8        Plaintiff then filed this lawsuit.  (Doc. 1.)  In her FAC, Plaintiff alleges violations

9   of the Expedited Funds Availability Act ("EFAA"), racial discrimination in violation of 42

10   U.S.C. § 1981, breach of contract, conversion, and unjust enrichment.  (Doc. 11 at 1.)  For

11   these claims, Plaintiff seeks a declaratory judgment and damages for her "medical

12   expenses, hospital bills, lost wages or loss of earning capacity" tied to her "pain and

13   suffering, emotional distress, and loss of enjoyment" in an amount "not less than

14   $50,000,000.00."  (*Id.* at 11.)  Defendant now moves to dismiss the FAC (Doc. 12), while

15   Plaintiff seeks an evidentiary hearing (Doc. 18).

16   **II.    LEGAL STANDARD**

17        To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

18   the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the

19   claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

20   of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

21   550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This

22   requirement is met if the pleader sets forth "factual content that allows the court to draw

23   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

24   *v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of

25   action, supported by mere conclusory statements, do not suffice." *Id.*  Plausibility does not

26   equal "probability," but requires "more than a sheer possibility that a defendant has acted

27   unlawfully." *Id.*  A dismissal under Rule 12(b)(6) for failure to state a claim can be based

28   on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a

1   cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

2   1988).  A complaint that sets forth a cognizable legal theory will survive a motion to

3   dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to

4   relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

5   570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

6   liability, it 'stops short of the line between possibility and plausibility of 'entitlement to

7   relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

8       In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are

9   taken as true and construed in the light most favorable to the nonmoving party. *Cousins v.*

10  *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as

11  factual allegations are not given a presumption of truthfulness, and "conclusory allegations

12  of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto*

13  *v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence

14  outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v.*

15  *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider materials—

16  documents attached to the complaint, documents incorporated by reference in the

17  complaint, or matters of judicial notice—without converting the motion to dismiss into a

18  motion for summary judgment." *Id.* at 908.

19  **III.  DISCUSSION**

20      **A. Motion to Dismiss**

21      The Court will address Defendant's Motion first.  Defendant argues that all of

22  Plaintiff's claims are unsupported by the facts and deficient as a matter of law.  (Doc. 12

23  at 3.)  Plaintiff counters that she has provided sufficient evidence to prove her claims.  (Doc.

24  16.)  The Court will analyze each claim in turn.

25      1. *Expedited Funds Availability Act*

26      The EFAA provides:
    [I]n any case in which . . . funds are received by a depository institution by
27  wire transfer for deposit in an account at such institution, such cash or funds
    shall be available for withdrawal not later than the business day after the
28

- 4 -

business day on which such cash is deposited or such funds are received for deposit.

12 U.S.C. § 4002(a)(1)(B).  The Act specifically provides that banks are civilly liable to individuals who suffer injury because of an EFAA violation.  12 U.S.C. § 4010(a).  A civil action may be brought "within one year after the date of the occurrence of the violation involved." 12 U.S.C. § 4010(d).  However. the EFAA does not prohibit account freezes resulting from suspicious activity, and a bank is not liable under the EFAA for freezing an account.  *Little Donkey Enter. Wash., Inc. v. U.S. Bankcorp.*, 136 F. App'x 91, 92 (9th Cir. 2005) ("Merely placing a hold on or freezing funds in an account after the deposits have been made available is not a violation of the Funds Act and thus does not support a claim for civil liability under 12 U.S.C. § 4010.").

Here, Plaintiff alleges that Defendant violated the EFAA by placing a freeze on her account, which did not allow her to withdraw any funds. (Doc. 11 at 4–6.)  However, an account freeze is not an EFAA violation.  12 U.S.C. § 4002; *Little Donkey*, 136 F. App'x at 92.  To allege an EFAA violation, Plaintiff would need to allege that BMO held a *particular deposit* beyond the timeframe allowed by the statute.  But Plaintiff alleges her account was frozen and that she was unable to withdraw *any* funds. (Doc. 11 at 4–6.)  This allegation does not a state a claim under the EFAA.  Accordingly, the Court will deny this claim without prejudice.

2.  *Section 1981*

Plaintiff next alleges that Defendant violated 42 U.S.C. § 1981. (Doc. 11 at 1.) Section 1981 provides relief when racial discrimination impairs a contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  To plausibly allege a § 1981 claim, a plaintiff "must show intentional discrimination on account of race."  *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).  In addition, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020).

1    Here, it appears that Plaintiff's section 1981 claim is premised upon her allegation

2  that there is "systemic discrimination and racism that continues to prevent racial minorities

3  from fully and fairly utilizing the financial services industry." (Doc. 11 at 2.)  Plaintiff also

4  states that she is an African American woman, and that Corry is also an African American

5  woman. (*Id.*; Doc. 16 at 1.)  Defendant argues that these allegations are insufficient to state

6  a claim under section 1981. (Doc. 12 at 4–5.)  Further, Defendant argues that the Deposit

7  Agreement that Plaintiff signed allows Defendant to freeze her account under the presented

8  circumstances. (*Id.* at 5.)  The Court agrees with Defendant.

9    To begin, Plaintiff does not specifically allege any intentional discrimination.  She

10  also does not identify any injuries flowing from a *specific* racially motivated breach of a

11  contract. *See Domino's Pizza*, 546 U.S. at 479–80.  Instead, she makes a *general* allegation

12  regarding systemic racial discrimination and references her race. (Doc. 11 at 2.)  That is

13  insufficient to state a section 1981 claim. *See Iqbal*, 556 U.S. at 678.  Moreover, Plaintiff

14  received a Deposit Agreement with Defendant when she opened her account.[1] (Doc. 11 at

15  3; Doc. 12 at 5.)   This Deposit Agreement contains a provision which provides that

16  Defendant "may restrict use of your Account in the event . . . we suspect you may be the

17  victim of fraud or that any transaction is fraudulent or may involve illegal activity, until

18  the dispute, uncertainty, or suspicion is resolved to our satisfaction." (Doc. 12-1 at 18.)

19  This is precisely what occurred here.  Plaintiff contractually agreed to this procedure and

20  has not plead any racially motivated breach of any other portion of the contract.

21  Accordingly, the Court will dismiss Plaintiff's section 1981 claim without prejudice.

22    3. *Breach of Contract*

23    Under Arizona law, a claim for breach of contract has three elements: (1) the

24  existence of a contract between the plaintiff and defendant; (2) a breach of the contract by

25  defendant; and (3) resulting damage to the plaintiff. *Frank Lloyd Wright Found. v. Kroeter*,

26  697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010).  Here, the FAC fails to identify any contractual

27

28  [1] The Court will consider the Deposit Agreement as part of the pleadings for purposes of evaluating this Motion. *See Ritchie*, 342 F.3d at 908; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

1    provision that Defendant breached.  (*See generally* Doc. 11.)  Additionally, the Deposit

2    Agreement specifically allows Defendant to freeze a customer's account for suspicious

3    activity.  (Doc. 12-1 at 18.)  Plaintiff agreed to this term when she opened the account.  For

4    these reasons, the Court will dismiss the breach of contract claim with prejudice.

5           4.  *Conversion*

6           Arizona law defines conversion as "an act of wrongful dominion or control over

7    personal property in denial of or inconsistent with the rights of another."  *Case Corp. v.*

8    *Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (quoting *Sears Consumer Fin. Corp. v.*

9    *Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990)).  For a plaintiff to prevail

10   on a conversion claim, they "must have had the right to immediate possession of the

11   personal property at the time of the alleged conversion."  *Id.*  "A conversion claim cannot

12   be maintained to collect on a debt that could be satisfied by money generally, but money

13   can be the subject of a conversion claim if the money 'can be described, identified or

14   segregated, and an obligation to treat it in a specific manner is established.'"  *Hannibal-*

15   *Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1098 (D. Ariz. 2021) (quoting

16   *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. Ct. App. 1973)).

17          The FAC fails to plead these elements.  As previously mentioned, Plaintiff still

18   ultimately had access to the funds in her account and was able to withdraw them.  (Doc. 11

19   at 7.)  Additionally, Defendant did not wrongfully hold Plaintiff's funds in any way

20   inconsistent with her rights to access those funds.  Rather, Defendant acted in accordance

21   with a mutually agreed upon contractual term.  (*See* Doc. 12-1 at 18.)  Defendant asserts

22   that they had a reason to suspect suspicious activity, and therefore froze the account

23   pursuant to the Deposit Agreement.  (*See* Doc. 12 at 6.)  This falls short of conversion.

24   Accordingly, Plaintiff has failed to plead a conversion claim, and the Court will dismiss

25   this claim with prejudice.

26          5.  *Unjust Enrichment*

27          To establish a claim for unjust enrichment, a plaintiff must show that (1) she

28   conferred a benefit upon defendant, (2) defendant's benefit is at plaintiff's expense, and

1  (3) it would be unjust to allow defendant to keep the benefit. *Murdock–Bryant Const., Inc.*

2  *v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985); *Pyeatte v. Pyeatte*, 661 P.2d 196, 202 (Ariz.

3  Ct. App. 1982). However, the mere receipt of a benefit is insufficient. *Pyeatte*, 661 P.2d

4  at 203. Rather, retention of the benefit without compensation must be unjust. *Id.*

5        Here, Plaintiff does not and cannot plead these elements. Most crucially, Defendant

6  did not keep any benefit at Plaintiff's expense. Defendant never seized or kept any of

7  Plaintiff's funds. Instead, Defendant temporarily froze Plaintiff's account. Once the

8  account was no longer frozen, Plaintiff withdrew all her funds and transferred them to

9  another bank. (Doc. 11 at 7.) Plaintiff never alleges that Defendant kept any of her money.

10  (*See id.*) Therefore, this claim fails, and the Court will dismiss it with prejudice.

11        **B. Motion and Request for Evidentiary Hearing**

12        Plaintiff also requests the Court set an evidentiary hearing. (Doc. 18 at 1.) Plaintiff

13  states that she has "audio and video recordings along with written witness statements from

14  third parties that will support her claim." (*Id.*) Defendant counters that Plaintiff's request

15  is improper and not supported by any legal authority. (Doc. 20 at 1.) The Court agrees

16  with Defendant.

17        Plaintiff has not provided the Court with any basis warranting an evidentiary hearing

18  or an order to show cause. If Plaintiff wishes to request oral argument on any motions

19  pending before the Court, she must do so in her own motion or in her response to one of

20  Defendant's motions. *See Jones v. Mohave Cnty.*, No. CV-11-8093-PCT-JAT, 2012 WL

21  79882, at *1 n.1 (D. Ariz. Jan. 11, 2012) (denying a similar request). Accordingly, the

22  Court will deny Plaintiff's Motion (Doc. 18).

23        **C. Leave to Amend**

24        Federal Rule of Civil Procedure 15(a) requires that leave to amend be "freely give[n]

25  when justice so requires." Leave to amend should not be denied unless, "the proposed

26  amendment either lacks merit or would not serve any purpose because to grant it would be

27  futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d

28  458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if

1   no request to amend the pleading was made, unless it determines that the pleading could

2   not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122,

3   1127 (9th Cir. 2000) (cleaned up).  Here, the allegation of other facts will not cure the

4   breach of contract, conversion, and unjust enrichment claims.  However, given the early

5   stage of this litigation, allowing amendment will likely help clarify the remaining EFAA

6   and section 1981 claims.  Accordingly, the Court will grant Plaintiff leave to amend her

7   complaint as to these remaining claims.

8   **IV.   CONCLUSION**

9   For the above reasons,

10   **IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss (Doc. 12).

11   Plaintiff's EFAA and section 1981 claims are dismissed without prejudice.  Plaintiff's

12   breach of contract, conversion, and unjust enrichment claims are dismissed with prejudice.

13   **IT IS FURTHER ORDERED denying** Plaintiff's Motion and Request for an

14   Evidentiary Hearing (Doc. 18).

15   **IT IS FURTHER ORDERED** granting Plaintiff leave to amend her EFAA and

16   section 1981 claims.  If Plaintiff intends to file a second amended complaint, it must be

17   filed no later than twenty (20) days after the date of this Order.

18   Dated this 3rd day of May, 2024.

19

20

21   Honorable Susan M. Brnovich
     United States District Judge

22

23

24

25

26

27

28